UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LARWUSON G. MULBAH,

           Plaintiff,

v.

YPSILANTI BOARD OF EDUCATION,
et al.,

           Defendants.

_____/

CIVIL ACTION NO. 02-72232

DISTRICT JUDGE PAUL D. BORMAN

MAGISTRATE JUDGE DONALD A. SCHEER

**SUPPLEMENTAL REPORT AND RECOMMENDATION**

**I.**    **RECOMMENDATION**:

I recommend that Defendants' Motion for Summary Judgment be granted.

**II.**    **REPORT**:

    **A.**    **Procedural History**

Plaintiff's Amended Complaint, filed on June 20, 2002, named as defendants the Ypsilanti Board of Education and five individual employees of the Ypsilanti school system. Plaintiff alleged that he was subjected to discrimination in his employment based upon his race, national origin and gender. He claimed that he was subjected to differential treatment with respect to the provision of facilities, equipment and supplies necessary to carry out his duties as a mathematics teacher. He further asserted that he was subjected to harassment, intimidation and unwarranted discipline, and that improper personnel management procedures were employed by the school administration with respect to him, but not as to others. Finally, he maintained that a settlement agreement intended to rectify the disparate treatment of him was undermined by a conspiracy among several of the defendants, and

that retaliatory action was taken against him because he sought to enforce his civil rights. Defendants' filed their Answer on July 10, 2002. On January 7, 2003, all Defendants joined in a Motion to Dismiss. A Motion for Summary Judgment was filed by the Defendants on January 16, 2003. Following a hearing, I issued a Report and Recommendation, on May 14, 2003, which was remanded by the district court judge on July 7, 2003. On October 14, 2003, I issued a Supplemental Report and Recommendation that Defendants' Motion to Dismiss be granted. On December 30, 2003, the court adopted the Report and Recommendation, as supplemented, and entered Judgment for Defendants.

On Appeal, the United States Court of Appeals for the Sixth Circuit affirmed the dismissal of all of Plaintiff's claims, with the exception of his Title VII claims of race, national origin and gender discrimination, as well as retaliation, against Defendant Ypsilanti Board of Education. Those claims were remanded to this court for further proceedings (DN 52). On December 17, 2004, the surviving claims were referred to the magistrate judge for All Pretrial Proceedings. Following receipt of the Mandate, on March 29, 2005, a Scheduling Conference was scheduled for May 2, 2005. Proceedings were stayed pending a ruling on Defendants' Petition for Writ of Certiorari. Notice of the denial of that petition was received on November 4, 2005, and a Scheduling Order was entered.

Defendant filed a Motion for Summary Judgment on April 14, 2006 (DN 72). Thereafter, on April 26, 2006, on Plaintiff's Motion, an Order was entered for the extension of discovery to May 18, 2006. Defendant was granted until May 25, 2006 to amend its previously filed Motion for Summary Judgment. Plaintiff was allowed until June 15, 2006 to file a Response. On June 15, 2006, Plaintiff filed a Motion for Further Extension of the

Deadline.  Defendant filed a written Response on the following day.  Plaintiff's motion was denied for lack of merit.

### B.   Applicable Law and Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue of material fact regarding the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial.  Celotex Corp. V. Catrett, 477 U.S. 317, 322 (1986); Martin v. Ohio Turnpike Comm'n, 968 F.2d 606, 608 (6th Cir. 1992).

In considering a motion for summary judgment, the court must view the facts and draw all reasonable inferences in a light most favorable to the nonmoving party.  60 Ivy St. Corp. v. Alexander, 822 F.2d 1432, 1435 (6th Cir. 1987).  The court is not required or permitted, however, to judge the evidence or make findings of fact.  Id. at 1435-36.  The moving party has the burden of showing conclusively that no genuine issue of material fact exists.  Id. At 1435.

A fact is "material" for purposes of summary judgment if proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties.  Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984).  A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

248 (1986). Accordingly, when a reasonable jury could not find that the nonmoving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *Id.*; Feliciano v. City of Cleveland, 988 F.2d 649, 654 (6th Cir. 1993).

Once the moving party carries the initial burden of demonstrating that there are no genuine issues of material fact in dispute, the burden shifts to the nonmoving party to present specific facts to prove that there is a genuine issue for trial. Anderson, 477 U.S. at 256. To create a genuine issue of material fact, the nonmoving party must present more than just some evidence of a disputed issue. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). As the United States Supreme Court has stated, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted); see Celotex, 477 U.S. at 322-23; Matsushita, 475 U.S. at 586-87.

Consequently, the nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. Lucas v. Leaseway Multi Transp. Serv., Inc., 738 F.Supp. 214, 217 (E.D. Mich. 1990) (Gadola, J.), aff'd 929 F.2d 701 (6th Cir. 1991). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find the plaintiff." Anderson, 477 U.S. at 252; see Cox v. Ky. Dep't of Transp., 53 F.3d 146, 150 (6th Cir. 1995).

**C.     Factual History**

4

The following recitation of facts is substantially derived from the Defendant's Brief in Support of the April 14, 2006 Motion for Summary Judgment.

Plaintiff was hired on August 28, 2002 as a full-time math teacher at Ypsilanti School District's high school (Amended Complaint, Introduction). Former Defendant Eric Graves (African-American, male) is the principal of the District's high school and supervises Plaintiff (DN 21, Graves Aff., ¶ 2). Former Defendant Michael McIntosh (Caucasian, male) is an assistant principal at the high school (DN 21, McIntosh Aff., ¶ 2). Former Defendant Timothy Isaly (Caucasian, male) left the District several years ago[1], and formerly was an assistant principal at the high school (DN 21, Isaly Aff., ¶ 2). Defendant Molly Joan Porter (Caucasian, female) has taught high school for nearly 25 years, and currently is head of the math department (DN 21, Porter Aff., ¶ 2). Former Defendant Terry Russell (Caucasian, male) works as a custodian, and previously was assigned to the high school (DN 21, Russell Aff., ¶ 2). Witness Christopher Flowers (African-American, male) also teaches in the high school math department, and has taught at the high school for over 25 years (DN 21, Flowers Aff., ¶ 2). Mr. John Fulton (Caucasian, male) is the Executive Director of Human Resources for Ypsilanti School District (DN 21, Fulton Aff., ¶ 2).

Plaintiff is from Liberia, and formerly worked as a teacher in Detroit Public Schools before he was discharged from that district (DN 21, Mulbah Depo., pp. 6-7, 39). Before Plaintiff was hired, Mr. Isaly, Ms. Porter and Mr. Flowers served on a committee which recommended Plaintiff for hiring (DN 21, Flowers Aff., ¶ 2; DN 21, Mulbah Depo., pp. 52-53). At the time Plaintiff was hired, the math department was composed of two African-

---

[1] Mr. Isaly currently works as a teacher in Texas (DN 21, Isaly Aff., ¶ 2).

Americans and six Caucasians (Amended Complaint, Introduction).  Plaintiff alleges that following his hiring, Ms. Porter and Mr. Isaly discriminated against him (purportedly because of his gender, national origin and race), despite being on the committee that had just recommended him for hiring, in the following respects:

1.  That Ms. Porter allegedly did not meet with Plaintiff before the first day of classes in Plaintiff's first year of teaching (*Id.* at ¶ 13);

2.  That Ms. Porter allegedly failed to afford Plaintiff certain resource materials (*Id.* at ¶¶ 14, 25);

3.  That Mr. Isaly and Ms. Porter did not assign Plaintiff to a classroom suitable to him (Plaintiff felt the room was too far from the math department) (*Id.* at ¶ 16);

4.  That Mr. Isaly purportedly did not furnish Plaintiff's classroom with furniture and equipment suitable to him (*Id.* at ¶ 15);

5.  That Plaintiff allegedly did not receive certain resource materials that other teachers purportedly received (*Id.* at ¶ 21); and

6.  That Mr. Isaly allegedly issued Plaintiff "bogus" letters of reprimand, changed one of his classes and required him to keep weekly lesson plans (*Id.* at ¶¶ 26, 27, 37-45).

Plaintiff also claims that Custodian Russell also discriminated against him (again based on natural origin, race and gender) because Mr. Russell dumped dirt and papers on Plaintiff's classroom desk and left a note on Plaintiff's chalkboard (*Id.* at ¶¶ 32 and 35).

Ms. Porter, Mr. Russell and Mr. Isaly deny that Plaintiff's gender, race, or the fact that he originally lived in Liberia had anything to do with these matters (DN 21, Porter Aff., ¶¶ 3-11; DN 21, Isaly Aff., ¶¶ 3-8; DN 21, Russell Aff., ¶¶ 3-9; DN 21, Flowers Aff., ¶¶ 2-5).  Ms. Porter testified that she did not meet with Plaintiff before the first day of classes because Plaintiff was unavailable most of the week (not her), and her decisions about room and resource assignments were based on space shortages, budgetary and classroom continuity

6

issues (DN 21, Porter Aff., ¶¶ 3-11; DN 21, Flowers Aff., ¶¶ 2-5; DN 69, Porter Depo., pp. 53-60).  Mr. Isaly testified that he issued discipline to Plaintiff (as he did with other Caucasians and female employees) based on his perceptions of Plaintiff's conduct (DN 21, Isaly Aff., ¶ 4, Exh. A).  Mr. Isaly did change the class and required weekly lesson plans because of complaints he received from parents and students (*Id.*, ¶¶ 5-6).  Mr. Russell admitted that he did dump dirt on Plaintiff's desk because he felt Plaintiff's room was too messy, and he wanted to make a point (DN 21, Russell Aff., ¶¶ 3-8).  It is undisputed that Mr. Russell had previously used the same approach with two Caucasian, female teachers for the same reason (DN 21, Russell Aff., ¶ 4).  It is undisputed that Mr. Graves, who is a male African-American, looked into Plaintiff's complaints and determined that no discrimination was involved (DN 21, Graves Aff., ¶ 3).

Plaintiff's Amended Complaint alleges that, after his original EEOC claim was dismissed on August 15, 2001,[2] Ms. Porter, Mr. Graves and Mr. McIntosh (Graves and McIntosh were not alleged to have discriminated against Plaintiff) retaliated against him in the following respects:

1.    Messrs. McIntosh and Graves moved Plaintiff to new classrooms (closer to the math department) (Amended Complaint, ¶¶ 50-51);

2.    Ms. Porter, Mr. Graves and Mr. McIntosh purportedly did not "give" Plaintiff his master keys to the high school promptly enough (*Id.* at ¶ 52);

3.    They purportedly did not give Plaintiff access to voice mail (unlike other teachers) for one month (*Id.* at ¶ 55);

---

[2]  Interestingly, Plaintiff does not allege that he was retaliated against shortly after filing his EEOC charges, but much later (after his charges were settled).  (Amended Complaint, ¶ 49).

7

4.    A teacher at the school was allowed to put locks on her classroom cabinets related to the Physics lab, prohibiting Plaintiff from using those cabinets (*Id.* at ¶ 60); and

5.    Mr. Graves purportedly did not respond appropriately when Plaintiff's cell phone and house keys allegedly were stolen (*Id.* at ¶ 62).

Plaintiff admits that he executed a Settlement Agreement releasing the District from all discrimination claims related to his EEOC filings (Amended Complaint, Exh. 1). Plaintiff has not alleged a breach of contract claim and has not asserted in his Amended Complaint that he filed an EEOC charge alleging retaliation, or that he obtained a right-to-sue letter.

Plaintiff admitted, however, while deposing Ms. Porter that she was not "responsible" for any of the above matters (DN 69, Porter Depo., p. 34). Ms. Porter and Messrs. Graves and McIntosh deny that they retaliated against Plaintiff in any way, or that they directed anyone to retaliate against him (DN 21, Porter Aff., ¶ 11; DN 21, Graves Aff., ¶¶ 4-10; DN 21, McIntosh Aff., ¶¶ 3-16; DN 69, Porter Depo, pp. 53-60; DN 69, Graves Depo., pp. 76-86). Not all Ypsilanti teachers have assigned, full time classrooms. Some have a number of rooms in which they teach (DN 69, Graves Depo., p. 10). Currently, one mathematics teacher moves with a cart among 2-3 classrooms (*Id.* at p. 33). That teacher, Matthew Perry, is a white male who, like Plaintiff in 2000, teaches 9th grade math (DN 69, Porter Depo., pp. 38-40; 47). When Plaintiff arrived at Ypsilanti High School, the Mathematics Department had seven assigned rooms. Mulbah was the eighth teacher. Thus, he was assigned to an available room, one floor above the math department, which had formerly been used by the Special Education Department. When the room was vacated, that department removed the equipment which had been purchased with special education funds (DN 69, Porter Depo., pp. 8-9; 15; 23-24; 38; 43-44). The seven math classrooms had a

8

standard allotment of computers (*Id.* at p. 11-12).  There were none in Plaintiff's classroom, but he could have used a mathematics laboratory containing 30 computers (*Id.* at p. 55). Mr. Graves was reluctant to redistribute computers from math classrooms or labs because of the effect of such action on the department as a whole (DN 69, Graves Depo., pp. 33-35). Ms. Porter, the head of the Mathematics Department, did not view classroom computers as essential to Mulbah's teaching assignment (*Id.* at p. 59).  She did share calculators , supplies and teaching materials with Plaintiff, or direct him to locations where they could be obtained (*Id.* at pp. 8; 15).  She provided him some items at her personal expense, and assisted him in obtaining essential equipment for his classroom (*Id. at pp. 26-27; 51-53).*

Plaintiff's classroom assignment was changed in 2001 because of his dissatisfaction with his first one (DN 69, Graves Depo., pp. 13; 74) and so that he would be closer to the math department (DN 21, Graves Aff., ¶ 3; DN 21, McIntosh Aff., ¶ 3).  At the time of the change, there were no vacant rooms in the mathematics hallway (DN 69, Porter Depo., p. 30). Plaintiff's superiors uniformly testified that the procurement of materials, access codes, keys and voice mail installation through administrative channels was primarily the responsibility of the individual teachers (DN 69, Graves Depo., pp. 13-15; 20-26; 36-38; 40-46; 78-82 - Porter Depo., pp. 12-14; 32-34; 36-37 - Fulton Depo., p. 73), and that Mulbah had access to them on an equal basis (DN 69, Fulton Depo., pp. 84-86).  Ms. Porter did acknowledge that teachers who move between rooms have greater difficulty with access, and that she was required to open doors for Mr. Perry, a white male teacher (DN 69, Porter Depo., pp. 38-40; 47).  Messrs. Graves and McIntosh assert that they made no attempt to withhold facility keys or access to voice mail (DN 21, Graves Aff., ¶ 4; DN 21, McIntosh Aff., ¶ 4).  Plaintiff was not given access to storage areas in the physics lab because they were

9

for physics equipment, and Plaintiff taught math (DN 21, Graves Aff., ¶ 7).  Finally Mr.
Graves did not treat Plaintiff differently in his investigation into materials stolen from Plaintiff
(*Id.* at ¶ 9).

Plaintiff has not alleged that he suffered any wage or benefit loss because of the
Defendant's actions.  He asserts that he was treated differently than other teachers who are
not from Liberia, who are not African-American, or who were women.  He admits to his lack
of direct evidence of discrimination or retaliation (*see, e.g.,* DN 21, Mulbah Depo., pp. 80-81)
and asserts that the complete basis for his Amended Complaint is his belief that he was
denied various job related considerations while others supposedly did receive those
benefits.

Plaintiff receives the same pay and benefits as other teachers at Ypsilanti High
School (DN 69, Fulton Depo., pp. 84-86).  He currently has an assigned classroom with the
standard number of computers.  He has keys and voice mail services, and has made no
complaint regarding such issues in four years (DN 69, Porter Depo., pp. 49-50).

**D.   Analysis**

Defendant asserts four arguments in support of its Supplemented Motion for
Summary Judgment.  They are:

> I -  Plaintiff's discrimination claims are barred by the Doctrine of
> Waiver and Release;[3]
>
> II - Defendant has not taken adverse employment action against
> Plaintiff;
>
> III - Plaintiff's discrimination and retaliation claims are only
> supported by his subjective beliefs; and

---

[3]  This argument also addresses Plaintiff's retaliation claim.

10

IV - Even if Plaintiff articulates *prima facie* claims of discrimination and retaliation, no evidence of pretext applies to Defendant's legitimate personnel decisions.

**I.**   **Plaintiff's Discrimination Claims are Barred by the Doctrine of Waiver and Release.**

The Amended Complaint alleges race, national origin and gender discrimination based upon a series of factual allegations regarding Mr. Mulbah's treatment by various agents of the Defendant.  Most of those allegations are directed against supervisory personnel at the Ypsilanti High School.  They can be generally summarized as allegations of inadequate channels of communication, insufficient allocations of space, furnishings, equipment and supplies; unwarranted and administratively improper disciplinary actions against Plaintiff; the imposition of disparate administrative burdens and excessive supervisory scrutiny upon plaintiff; and improper (disparate) evaluative procedures.  Plaintiff alleges, and Defendant admits, that the parties entered into a settlement agreement with respect to all of the foregoing charges of discrimination.  (See Complaint, ¶ 49; Answer ¶ 49).  In support of its Motion for Summary Judgment, Defendant relies upon the Affidavit of John Fulton, Executive Director of Human Resources for the School District of Ypsilanti.  (DN 21, Exhibit B).  That Affidavit asserts that the settlement agreement was concluded in connection with a Complaint by Plaintiff with the Equal Employment Opportunity Commission ("EEOC").  Attached to the Fulton Affidavit are copies of: (A) the school district's statement of position in Michigan Department of Civil Rights ("MDCR") Case No. 264044 (EEOC #23AA15890); and (B) the settlement agreement in the same action.  The agreement, signed by Plaintiff, Mr. Fulton on behalf of the Defendant and a representative of the MDCR, states that Plaintiff "considers this agreement to be an acceptable resolution

11

of this matter," and that Plaintiff "agrees not to sue the respondent with respect to any matters pertaining to the above-numbered Complaint." The settlement also provides that there would be no retaliation against the Plaintiff. Defendant agreed to afford instructional equipment, materials, resources and facilities relating to classes taught by claimant in a manner consistent with the treatment of other instructors of similar courses. (DN 21, Fulton Affidavit, Exhibits A and B).

Our Circuit has recognized that employers and employees may negotiate valid releases of Title VII claims. Runyan v. National Cash Register Corp., 787 F.2d 1039 (6th Cir.), *cert. denied*, 479 U.S. 850 (1986). In determining whether a claimant has waived his right to continue with a discrimination claim, courts apply ordinary contract principles. Adams v. Phillip Morris, Inc., 67 F.3d 580, 583 (6th Cir. 1996). A court is bound to give the language used in a release its plain, ordinary meaning. Grant Co. Save and Loan Ass'n v. Resolution Trust Corp., 967 F.2d 722 (4th Cir. 1992). When the parties have negotiated a release, and both parties agreed to the language included in it, the court will assume the parties are fully aware of the terms and scope of their agreement. *Id.* In the case at bar, the settlement agreement was negotiated following an EEOC/MDCR Complaint and investigation. The language of the agreement is straightforward, and Plaintiff is an educated and articulate individual. The terms of the agreement were approved by the Michigan Department of Civil Rights, as evidenced by the signature of its representative. A valid settlement agreement reached in the course of EEOC administrative proceedings concludes the issues addressed and forecloses a subsequent lawsuit on the same issues.

The gravamen of the common allegations in paragraphs 50 through 62 of the Amended Complaint is that Defendant breached the settlement agreement by subsequent

12

retaliatory conduct, although no discrete breach of contract claim is asserted.  In the absence of a finding of a breach by Defendant, the settlement agreement is dispositive of the discrimination claims addressed in it (i.e., all claims prior to the date of the settlement).

> In enforcing these agreements, federal courts give EEOC settlement agreements the same effect as voluntary settlements of general litigation, Lyles v. Meritor Savings Bank, 1992 WL 165840*1-2, 1992 U.S. Dist. Lexis 8247, 3-4 (E.D. PA June 11, 1992) (citing Spiridigliozzi v. Bethlehem Mines Corp., Cambria Division, 558 F.Supp. 734, 736 (W.D. PA 1980)), because [t]here is no favored status for EEOC complainants entitling them to unusual liberality in disregarding settlements . . . what would amount to waiver, release, or covenant not to sue in any civil litigation is sufficient to produce the same consequences with respect to matters covered by EEOC [settlement agreements].

Melendez v. Horizon Cellular Telephone Co., 841 F.Supp. 687 (E.D. PA 1994) (citing Spiridigliozzi, 558 F.Supp. at 736).

As the Court in Melendez observed, many courts have held that parties who enter into Title VII settlement agreements waive their right to proceed on the underlying claim, in the absence of a showing that the agreement was procured by fraud.  Melendez, 841 F.Supp. at 691.  The opinion opts, however, for a "better approach" suggested in Spiridigliozzi.  The court in that case determined that, when the release of a Title VII claim is contingent upon the other party's performance of the promises made in an agreement (as opposed to being contingent upon the mere promise to perform), the prior claim may be revived only if the alleged non-compliance relates to a matter sufficiently substantial to justify invalidation of the settlement agreement.  *Id.*  (Citing Spiridigliozzi, 558 F.Supp. at 736 n.1).

The enforcement of Title VII settlement agreements is plainly within this court's subject matter jurisdiction.  EEOC v. Safeway Stores, Inc., 714 F.2d 567, 571-73 (5th Cir.

13

1983), *cert. denied*, 467 U.S. 1204 (1984).  Even if this Plaintiff's *pro se* Amended Complaint is liberally construed to include an action for the enforcement (or invalidation) of the Settlement Agreement, another threshold question presents itself.  Our circuit has held that an action to enforce a settlement agreement arrived at through the conciliation efforts of EEOC, and to which EEOC was a signatory party, is barred by a plaintiff's failure to exhaust administrative remedies.  <u>Parsons v. Yellow Freight System, Inc.</u>, 741 F.2d 871 (6th Cir. 1984).  That principle has been found to apply not only to a non-compliance or enforcement claim, but also to a retaliation claim which is simply a "restatement" of the non-compliance claim.  <u>Eneje v. Ashcroft</u>, 2003 WL 21456259 (C.A. 6 (KY)) (unpublished).  Mr. Mulbah has neither alleged nor proven that his non-compliance/enforcement claim was addressed before the EEOC/MDCR.[4]  Thus, he maintains this action without demonstrating his exhaustion of available administrative remedies with respect to both his pre-settlement discrimination claims (which were explicitly terminated by the settlement agreement) or his enforcement/non-compliance/retaliation claim.  "The requirement that the Plaintiff exhaust administrative remedies prior to instituting suit is intended to ensure that the Commission will have been afforded an opportunity to attempt conciliation and voluntary settlement, 'the preferred means for resolving employment discrimination disputes.'"  <u>Parsons</u>, 741 F.2d at 873 (quoting <u>United States v. Allegheny-Ludlum Industries, Inc.</u>, 517 F.2d 826, 846 (5th Cir. 1975), *cert. denied*, 425 U.S. 944 (1976).  The Amended Complaint is subject to dismissal, without prejudice, pending the necessary showing.  Even if Plaintiff can establish the

---

[4]  Mr. Mulbah did testify in a deposition that he addressed his retaliation claim with the EEOC.  (Mulbah Depo., DN 21, pp. 182-83).  The result of that action is not reflected in the Amended Complaint, and no evidence of an administrative disposition appears in the record.

14

exhaustion of his administrative remedies, his original claims are barred by the Doctrine of Waiver and Release unless he can establish a legal basis for avoiding the effect of his settlement agreement.

## II.     Defendant Has Not Taken Adverse Employment Action Against Plaintiff

I am satisfied that Defendant is entitled to summary judgment on the retaliation claim.[5]  A *prima facie* case of retaliation requires a showing that: (1) plaintiff engaged in activity protected by Title VII; (2) the exercise of his civil rights was known to the defendant; (3) the defendant thereafter took an adverse employment action against the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action.  Hollins v. Atlanta Co., Inc., 188 F.3d 652, 661 (6th Cir. 1999).  Plaintiff has sufficiently satisfied the first two requirements.  The January 14, 2003 Affidavit of John Fulton acknowledges that Mr. Mulbah filed an EEOC charge alleging race, national origin and gender discrimination.  A copy of the Ypsilanti Public School's Statement of Position to the State of Michigan Department of Civil Rights is attached to the Affidavit.  Also attached is a copy of the Settlement Agreement, bearing case numbers for both the MDCR  (No. 264044) and the EEOC (No. 23AA15890), signed by Mr. Fulton on behalf of the Ypsilanti Public Schools on August 15, 2001.

The Amended Complaint alleges that, following the settlement agreement, Plaintiff was: a) deprived of his assigned classroom and its contents; b) denied the use of the classroom formerly used by the teacher to whom his room was assigned; c) required to

---

[5]  This analysis applies with equal force to Plaintiff's original discrimination claims, but detailed application is unnecessary in view of the written EEOC settlement.

15

teach his classes in laboratories designed for physics and chemistry instruction, without adequate storage space and keys; and d) denied keys for other school spaces, including the Mathematics Department office, restrooms and lunchroom.  Plaintiff complains that he was required to "float" between the two laboratory rooms for teaching purposes, and that he suffered from odors resulting from physics and chemistry experiments performed in those rooms.  He alleges that locks were put on all the cabinets in the physics lab to prevent his use of them, and that the principal (Mr. Graves) broke a promise to secure the return of Plaintiff's house keys and cell phone, which were allegedly stolen by a student.  (Amended Complaint, ¶¶ 50-62).

An employer may be subject to vicarious liability for the discriminatory acts of its supervisory personnel which result in an adverse employment action against a claimant. Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998).  The anti-retaliation provisions of Title VII forbids an employer to discriminate against an employee because he has exercised his rights under the Civil Rights Act.  42 U.S.C. §2000e-3(a).  "Title VII does not define the phrase 'discriminate against,' which is repeated in Title VII's other anti-discrimination provisions, but courts have made clear that not just any discriminatory act by an employer constitutes discrimination under Title VII."  White v. Burlington Northern and Santa Fe Railroad Co., 364 F.3d 789 (6th Cir. 2004) (citing Ellerth).  Case law has established that de minimis employment actions are not actionable under Title VII.  Bowman v. Shawnee State Univ., 220 F.3d 456, 462 (6th Cir. 2000).  "If every low evaluation or other action by an employer that makes an employee unhappy or resentful were considered an adverse action, Title VII would be triggered by supervisor criticism or even facial expressions indicating displeasure."  Primes v. Reno, 190 F.3d 765, 767 (6th Cir. 1999).

16

The Sixth Circuit decision in <u>White v. Burlington Northern</u> reviewed the case law development of the concept of "adverse employment action."   364 F.3d at 795-800. Although the word "discrimination" might logically be held to include any form of differential treatment, our circuit has determined that a plaintiff claiming employment discrimination must demonstrate a materially adverse change in the terms of employment.  A "mere inconvenience or an alteration of job responsibilities" or a "bruised ego" will not constitute an adverse employment action.  Furthermore, "reassignments without salary or work hour changes do not ordinarily constitute adverse employment decisions" unless they constitute a demotion evidenced by "a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation."  <u>White</u>, 364 F.3d at 797 (citing <u>Kocsis v. Multi-Dash Care Management, Inc.</u>, 97 F.3d 876, 885-87 (6th Cir. 1996) and cases from other circuits).

The Sixth Circuit Opinion in <u>White v. Burlington Northern</u> notes that the Supreme Court cited <u>Kocsis</u> approvingly in <u>Burlington Industries v. Ellerth</u>, 524 U.S. 742 (1998).  In resolving the Title VII sexual harassment claim under consideration in that case, the Court determined that "(a) tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  <u>Ellerth</u>, 524 U.S. at 761.  Defendant's brief cites cases from other Circuits which have similarly concluded that employment actions not involving the ultimate concerns of hiring, firing, compensation, leave, or promotion are not so "adverse" as to be capable of establishing a *prima facie* case of discrimination under Title VII.  (See, Defendant's Brief, page 14).  The Defendant emphasizes that Mr. Mulbah remains gainfully employed as a teacher with the

17

School District of Ypsilanti.  He has been continually employed as a teacher since August 2000 at a rate of compensation consistent with an applicable collective bargaining agreement.  (DN 69, John Fulton Depo., p. 85).  Plaintiff has offered no legal authority for the proposition that he was entitled to the assignment of any particular classroom facilities. His reassignment to the laboratory spaces, while undoubtedly inconvenient, did not deprive him of pay, benefits, responsibilities, status, title or seniority.  The school principal, Eric Graves, testified that Plaintiff was assigned to new teaching spaces in 2001 because he had asked to be closer to the Mathematics Department.  (DN 69, Eric Graves Depo., p. 74).  The testimony of Plaintiff's supervisors consistently establishes that teachers are responsible for making the necessary arrangements to receive keys, access codes and voice mail services. In any event, such workplace inconveniences as the lack of keys and adequate storage facilities, even if attributable to some act or omission chargeable to the Defendant, are simply not "sufficiently adverse" to support a retaliation (or discrimination) claim under Title VII.

I further find insufficient evidence in the record to support Plaintiff's claim that his difficulties after August 15, 2001 were causally connected with his EEOC Complaint.  To establish a causal connection, a Plaintiff must produce sufficient evidence to support a reasonable inference that the adverse action would not have been taken had the Plaintiff not engaged in protected activity.  Nguyen v. City of Cleveland, 229 F.3d 559, 563 (6th Cir. 2000).  Causation can be inferred from indirect or circumstantial evidence, such as evidence that the Defendant treated the Plaintiff differently from similarly situated employees or that the adverse action was taken shortly after the Plaintiff's exercise of protected rights.  Id.  "To survive summary judgment, the evidence of causation must be 'sufficient to raise the

18

inference that [the Plaintiff's] protected activity was the likely reason for the adverse action.'" Scott v. Potter, 2006 WL 1524742 (6th Cir. 2006) (citing Zanders v. Nat'l R.R. Passengers Corp., 898 F.2d 1127, 1135 (6th Cir. 1990). The evidence in this case indicates that Mr. Mulbah was moved from a first floor classroom and assigned to teach in two laboratory spaces in the school basement (nearer to the Mathematics Department) at the commencement of the 2001-2002 school year. That reassignment occurred approximately two weeks following the signing of the EEOC Settlement Agreement. (See Exhibit 3 to Mulbah Deposition). While a short time interval between protected activity and an adverse job action might support an inference of retaliation in some cases, the strength of that inference in this case is insubstantial. It is illogical that Defendant would take "retaliatory" action against Plaintiff remote in time from his filing of EEO charges, but immediately following a settlement of them on terms favorable to Defendant. The agreement was signed shortly before the beginning of a new school year. Classroom assignments are normally made at the beginning of a school year, and Plaintiff had expressed a desire to be located closer to the Math Department. Furthermore, his first year classroom was not assigned to the Mathematics Department, and Mulbah had complained about the lack of computers as well as the location. Mulbah offers no other evidence to support his conclusion that the August 2001 room assignment was retaliatory. Plaintiff, as the non-moving party, must present more than just some evidence of a disputed issue. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the [non-moving party's] evidence is merely colorable, or is not significantly

19

probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 249-50 (1986).  I find nothing in the record which creates an issue of material fact.

### III.   Plaintiff's Discrimination and Retaliation Claims Are Only Supported by His Subjective Beliefs

Defendant correctly observes that a Plaintiff's subjective beliefs that employment

related events were discriminatory or retaliatory cannot establish a *prima facie* case under

Title VII.  Hein v. All American Plywood Co., 232 F.3d 482, 488-89 (6th Cir. 2000); Mitchell

v. Toledo Hosp., 964 F.2d 577, 584 (6th Cir. 1992); Lamont v. MSX Int'l., 63 F.Supp. 2nd 778,

783 (E.D. Mich. 1990); Nobel v. Brinker Int'l, Inc., 175 F.Supp. 2nd 1027, 1041 (E.D. Ohio

2004).   Mere subjective beliefs cannot support a retaliation claim.   Travis v. Board of

Regents of the University of Texas, 122 F.3d 259, 266 (5th Cir. 1997); Jones v. BASF, Corp.,

199 U.S. Dist. LEXIS 5153 (W.D. Mich. 1999).  In this case, Plaintiff's claims are supported

only by his conjectural personal beliefs.  Mr. Mulbah has repeatedly asserted his perception

that Defendant's various acts with respect to him were motivated by discriminatory animus.

He further expressed his opinion that others outside his protected class were treated

differently, without offering specific evidence to establish the claim.  (See, e.g. DN 21,

Mulbah Depo., pp. 50-56; 80; 113; 188-89; 209).  There is clearly no direct evidence of

retaliatory (or discriminatory) animus on the part of any Defendant.  Each Defendant denies

that his or her actions were motivated by improper considerations.   Several witnesses

offered evidence of their efforts to treat Plaintiff as well, if not better, than other teachers at

the school.  They have offered evidence that Plaintiff's experiences were consistent with

normal school procedures and practices which affected minority and non-minority teachers

equally.  In the absence of evidence to the contrary, summary judgment for Defendant is

appropriate.  A plaintiff may be free to jump to conclusions unsupported by the evidence. This Court is not.  In the absence of support in the record, Mr. Mulbah's claims of retaliation must fail because he has failed to make out a *prima facie* case.

### IV.    There is no Evidence That Defendant's Explanations are Pretextual

Even if Plaintiff had been able to establish a *prima facie* case of discrimination, the Defendant has presented substantial evidence that the management decisions relating to him were based upon legitimate employment criteria having nothing whatsoever to do with his race, national origin or gender.  That evidence is unrebutted, and Plaintiff has manifestly failed to carry his burden of proving discrimination by a preponderance of evidence.  Absent a viable retaliation claim, Plaintiff has no basis upon which to assert the underlying discrimination claims which were the subject of his August 15, 2001 settlement agreement with the Ypsilanti Schools.  Even if such were not the case, the same substantive arguments offered by the Defendant in response to the retaliation claims apply with equal force to Plaintiff's original charges of discrimination.  I have read all of the discovery information submitted by the parties, including the Affidavits filed in support of the various discovery and substantive motions.  The evidence adequately establishes that Mr. Mulbah's early career with the Ypsilanti Public Schools was fraught with frustration and disappointment.  Limited classroom space, inadequate numbers of computers and calculators in the Mathematics Department, inadequate budgets, misunderstandings and technical impediments relating to the provision of access codes, room keys and voice mail facilities; and conflicts with custodial and supervisory personnel appear to have led this Plaintiff to conclude that he was the victim of race, national origin and gender discrimination.  Even the Plaintiff admits,

21

however, that his conclusions were subjective, and he has failed to present sufficient evidence to withstand the Defendant's Motion for Summary Judgment.  His original claims of discrimination were addressed to the EEOC/Michigan Department of Civil Rights, and were resolved administratively by way of a settlement agreement.  Plaintiff has failed to establish a *prima facie* case of retaliation for his EEO activities, and no other basis exists upon which to deny the Defendant the benefits of that settlement.   Accordingly, I recommend that Defendant's Motion for Summary Judgment be granted.

### III.   <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. Section 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981), <u>Thomas v. Arn</u>, 474 U.S. 140 (1985), <u>Howard v. Secretary of HHS</u>, 932 F.2d 505 (6th Cir. 1991).  Filing of objections that raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  <u>Smith v. Detroit Federation of Teachers Local 231</u>, 829 F.2d 1370, 1373 (6th Cir. 1987), <u>Willis v. Secretary of HHS</u>, 931 F.2d 390, 401 (6th Cir. 1991).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall not be more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response

shall address specifically, and in the same order raised, each issue contained within the objections.

s/Donald A. Scheer
DONALD A. SCHEER
UNITED STATES MAGISTRATE JUDGE

DATED: September 5, 2006

_____

## CERTIFICATE OF SERVICE

I hereby certify on September 5, 2006 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically.  I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on September 5, 2006.  **Larwuson Mulbah.**

s/Michael E. Lang
Deputy Clerk to
Magistrate Judge Donald A. Scheer
(313) 234-5217